IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| MARGARET SHIELDS, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> THE UNIVERSITY OF ) <br> WEST ALABAMA; THE ) <br> UNIVERSITY OF WEST ) <br> ALABAMA BOARD OF ) <br> TRUSTEES, ) <br> ) <br> Defendants. | 7:14-cv-02198-LSC |

MEMORANDUM OF OPINION

Plaintiff Margaret Shields alleges that Defendants University of West Alabama and University of West Alabama Board of Trustees (collectively "UWA") discriminated against her because of her sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") when they failed to hire her as a housekeeper or housekeeping supervisor. UWA has moved for Summary Judgment. For the reasons stated below, that Motion is due to be GRANTED in part and DENIED in part. UWA additionally moved to strike evidence submitted by Shields. The Court finds that Motion MOOT because the underlying evidence does not affect this decision.

**I.   BACKGROUND**

Around August 2013, UWA posted notices for three job vacancies. Two of the vacancies were for housekeepers. The third vacancy was for a housekeeping supervisor. The qualifications for housekeeping supervisor candidates included (1) high school diploma, (2) good speaking and writing skills, (3) five years of experience in housekeeping, (4) two years as supervisor in housekeeping with fifteen or more employees, and (5) general working knowledge of computers. The postings required applicants to submit application forms that could be obtained at UWA.

Margaret Shields first applied for a job as a housekeeper with UWA in 2008. She was not hired for a position. In either August or October 2013[1], Shields called UWA and spoke to Shirley Boyd, who was acting in a supervisory role for housekeeping personnel. Shields asked about openings in housekeeping. Boyd told her that UWA had two housekeeping vacancies and that it intended to hire one man and one woman for the positions.[2] Boyd stated that she told Shields that UWA tries to balance men and women on their housekeeping crews, but Shields stated that Boyd told her that she was only hiring a man for one of the positions because the job entailed stripping, waxing, and buffing floors.

---

[1] The parties dispute the date of this conversation. Shields says it happened in August, while Boyd says it happened in October.
[2] Because she asserts this conversation occurred in October, Boyd says that UWA had already hired two housekeepers when Shields called. However, if their conversation occurred in August, then UWA would not have hired the two housekeepers.

During this or another phone conversation, Shields says that Boyd retrieved her 2008 application from their files, giving Shields the impression that they would consider her application. UWA's applications state that they are only active for forty-five days, and according to an unwritten policy, UWA says it only considers applications less than three years old and requires applicants to fill out new applications, rather than updating old ones. Shields did fill out a new application for the housekeeping position in August 2013. Further, she was not interviewed or hired for the position. Instead, UWA hired one woman on September 9, 2013 and one man on October 2, 2013 for the two housekeeping vacancies

In October 2013, Shields went to UWA and spoke to Bobby Truelove, UWA's Director of Physical Plant. Shields said she had an application on file and wanted to update it, and Truelove advised her to submit a new application. Shields did submit a new written application for the housekeeping supervisor position in October 2013. On December 9, 2013, Shields filed a charge with the EEOC in which she mentioned Boyd's statements about hiring a male and about stripping, buffing, and waxing floors.

In January 2014, UWA interviewed Frank Calloway for the housekeeping supervisor position. Calloway previously worked for Servpro beginning in February 2013. In that position, Calloway supervised a crew of housekeepers that cleaned

apartments at UWA during the summer of 2013. The evidence is unclear, however, on how many employees he supervised. UWA hired Calloway in May 2014 as the housekeeping supervisor.

## II. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The trial judge should not weigh the evidence but must simply determine where there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Services, LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element

of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id*. Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986).

### III. Discussion

Title VII prohibits employment discrimination based on sex, including failing to hire a person because she is a woman. 42 U.S.C. § 2000e-2. A plaintiff may bring a Title VII action in district court against an employer that discriminates against her, but only after exhausting her administrative remedies. *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir.). Typically, exhaustion requires a plaintiff to file a charge with the EEOC. The EEOC charge limits the scope of the plaintiff's action. However, "the scope of the EEOC complaint should not be strictly interpreted." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (11th Cir. 1970). Rather, a plaintiff's district court complaint "is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Georgia Dept. of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (quoting *Alexander v. Fulton Cnty. Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000)).

Shields filed a charge with the EEOC on December 9, 2013. She specifically mentioned the housekeeper job, but she did not mention the supervisor position. All of the factual allegations in the EEOC charge relate to the housekeeping position. For instance, the charge mentioned stripping and buffing floors—tasks that a supervisor does not perform. Further, she states that the discrimination occurred in August 2013, but she did not apply for the supervisor position until October 2013. In fact, UWA did not hire a housekeeping supervisor until May 2014, more than five months after Shields filed her EEOC charge. The EEOC therefore did not have all of the facts necessary to make a determination for five months of their investigation. Accordingly, Shields's claim about the supervisor position is not within the scope of her EEOC charge. Shields two claims of discrimination are best seen as separate allegations of discrimination for which two charges were required. However, even if the claim was within the scope of the EEOC charge, Shields has not presented sufficient direct or circumstantial evidence to survive summary judgment.

### A. Direct Evidence of Discrimination

A plaintiff may prove discrimination either through direct or circumstantial evidence. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). "Direct evidence is evidence that establishes the existence of discriminatory

intent behind the employment decision without any inference or presumption." *Id.* Typically, such evidence consists of "only the most blatant remarks, whose intent could be nothing other than to discriminate" based on sex. *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989). "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard*, 161 F.3d at 1330.

Shields asserts that although Boyd was not the final decision-maker, she influenced Truelove's decision not to hire Shields under the "cat's paw" theory. The cat's paw theory imposes liability on an employer when a decision-maker who takes an adverse employment action does not have discriminatory animus but is influenced by the discriminatory animus of a non-decision-maker. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 418–419 (2011). The Eleventh Circuit has not applied the cat's paw theory to Title VII cases. However, in *Staub*, the Supreme Court said that the Uniformed Services Employment and Reemployment Rights Act ("USERRA") and Title VII were "very similar" because both state that discrimination can be established when an impermissible factor is a motivating factor, rather than strict but-for causation. *Id.* at 417; *see Sims v. MVM, Inc.*, 704 F.3d 1327, 1335 (11th Cir. 2013).

In this case, the only example of direct evidence of discrimination in hiring for the housekeeping position is the conversation between Shields and Boyd where Boyd indicated that UWA intended to hire a man for one of the positions. Boyd and Shields differ somewhat on their recollection of the conversation. Shields said that Boyd told her that they were only hiring a man for one of the positions because it required stripping, waxing, and buffing floors. Boyd said that she told Shields that they tried to balance hiring men and women and that they hired a man for one of the vacancies. Despite their different accounts of the conversation, though, neither disputes that Boyd mentioned the hiring of a man for one of the positions. Viewed in the light most favorable to Shields, Boyd's statement could lead to a finding of discrimination based on her stated intention to hire a man for one of the housekeeping positions.

UWA, however, disputes whether Shields even applied for the housekeeping position because she did not submit a new written application.[3] Boyd and Truelove stated that, as a policy, they only consider applications submitted within the previous three years. Further, the applications state that they are only active for forty-five days. Shields stated Boyd said that she had retrieved Shields's 2008

---

[3] Neither party disputes that Shields submitted written applications in 2008 and on October 10, 2013, but because UWA hired persons for the two housekeeper positions on September 9, 2013 and October 2, 2013, the October 10 application cannot be seen as an application for the housekeeping positions.

application, giving Shields the impression that she did not have to submit a new application. If Shields's recollection of the conversation is accurate, then Boyd could have waived the three year policy for Shields's application. These conflicting accounts of the application process present a genuine issue of material fact as to whether Shields sufficiently applied for the housekeeping job.

Further, UWA argues that Boyd was not a decision-maker for the housekeeper position. Although Boyd did not state that she made the final hiring decision for the housekeeping position, she did review and cull the applications, and Truelove's deposition testimony confirms that Boyd was involved in selecting and interviewing the final candidates. Accordingly, Boyd's alleged discrimination could have been a motivating factor in the selection of candidates to interview and ultimately hire. Whether the cat's paw theory is required depends on the extent to which Boyd contributed to the decision to hire. The undisputed evidence does not clearly delineate her role, but it does indicate she was sufficiently involved to raise a genuine issue of fact about whether she was a final decision-maker and how much her alleged discriminatory animus affected the hiring decision. Moreover, Boyd's explanation of why UWA hired a man could lead to a finding that the ultimate decision-makers also had discriminatory animus. Because of the disputed issues of fact as to Boyd's statement about hiring a man, Shields's application, and Boyd's

role in the hiring process, UWA's Motion for Summary Judgment is due to be denied as to the housekeeping position. Further, because Shields has presented direct evidence sufficient to survive summary judgment, the Court need not address the circumstantial evidence she presented. *See Taylor v. Runyon*, 175 F.3d 861, 867 n.2 (11th Cir. 1999).

In her statement of additional disputed material facts, Shields also stated that Boyd told her that she was only going to hire a male for the housekeeping supervisor position. However, Shields has not provided evidence supporting that proposition. In her deposition, Shields said, "I applied for the job in housekeeping and they told me it wasn't going to hire a female, they was going to hire a male for that position." When asked, "You['re] talking about a job as a housekeeper?" Shields then said, "Housekeeper, yeah. They said they was only going to hire a male." (Doc. 40-3 at 46). Shields also stated that Boyd wanted to hire a male because the job entailed waxing, stripping, and buffing floors—tasks not included in the housekeeping supervisor job description. (Doc. 40-3 at 43). Thus, even if Shields's claim of discrimination as to the supervisor position was within the scope of her EEOC charge, she has not presented direct evidence of discrimination.

### B. Circumstantial Evidence as to Supervisor Position

Furthermore, if Shields's EEOC charge reasonably related to her application for housekeeping supervisor, she could not establish a prima facie case of discrimination. In cases where a plaintiff relies on circumstantial evidence, she carries the initial burden of producing evidence sufficient to prove a prima facie case of discrimination. A prima facie case for failure to hire requires the plaintiff to show:

> (1) she is a member of a protected class, (2) she was qualified for a position and applied for it, (3) she was not considered for the position despite her qualifications, and (4) equally or less qualified individuals outside her protected class were considered or hired for the position.

*Underwood v. Perry Cnty. Comm'n*, 431 F.3d 788, 794 (11th Cir. 2005). If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason" for not hiring the plaintiff. *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1457 (11th Cir. 1997). "If the defendant does so, the burden shifts back to the plaintiff to 'introduce significantly probative evidence showing that the asserted reason is merely pretext for discrimination.'" *Id.* (quoting *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993)). The plaintiff's burden to establish pretext applies to all of the defendant's proffered reasons. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000).

Neither party disputes that Shields is female and was not considered or hired for the position. UWA, however, disputes that she was qualified for the position. A qualified applicant must "satisfy[y] an employer's objective qualifications." *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 769 (11th Cir. 2005). Applicants' "skill and background" often "determine if they were qualified for a particular position." *Clark*, 990 F.2d at 1227. Subjective evidence, in light of evidence showing objective skill or experience, is typically best saved for the pretext stage. *See Young v. General Foods Corp.*, 840 F.2d 825, 829 n.3 (11th Cir. 1988) (indicating subjective assessments of job performance are best addressed at pretext stage).

Shields stated[4] that her work experience included: crew leader at Burger King, self-employed as a housekeeper at Margo's Cleaning Service, substitute teacher, housekeeper at Rush Medical, and administrative assistant at the Sumter County Sheriff's Department. Although at least two of those jobs included housekeeping, Shields never testified that she worked as a housekeeping supervisor. At most, she did operate her own housekeeping business, but none of the evidence—including the evidence UWA wants struck—indicates that Shields

---

[4] UWA moved to strike two exhibits submitted by Shields—a certificate in commercial housekeeping and Shields's employment application. Shields's deposition testimony is largely consistent with her employment application, and the certificate is not probative enough to affect the Court's analysis. Because neither the inclusion nor exclusion of that evidence affects this decision, the Court need not rule on the UWA's Motion to Strike.

supervised a crew of housekeepers as part of that business. UWA's job posting specifically required two years of experience as a supervisor in housekeeping with fifteen or more employees. UWA hired Frank Calloway who had experience supervising housekeepers. He only had at most eleven months of experience supervising housekeepers at the time of his interview, and UWA did not know how many employees he supervised. Thus, UWA waived parts of the experience requirement. However, UWA did not waive the requirement altogether. Because UWA specifically required an experienced housekeeping supervisor and it hired a person with experience supervising a crew of housekeepers on UWA's campus, Shields cannot establish that she was qualified to be housekeeping supervisor or that UWA hired an equally or less qualified person instead of her. Thus, Shields fails to establish a prima facie case of discrimination as to the supervisor position.

## IV.   CONCLUSION

For the foregoing reasons, UAW's Motion for Summary Judgment is due to be GRANTED in part and DENIED in part. Genuine issues of material fact exist as to Shields's claim of discrimination regarding the housekeeping position. However, Shields's claim of discrimination regarding the housekeeping supervisor position is not within the scope of her EEOC charge, but even if it was, Shields failed to present sufficient direct or circumstantial evidence to show discrimination.

Further, because neither the inclusion nor exclusion of evidence UWA moved to strike affects this decision, the Court finds that Motion MOOT. A separate order consistent with this Memorandum of Opinion will be entered.

Done and Ordered this 5th day of January 2016.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
182185